IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WAYNE A. HUSSAR, II, | Cause No. CV 19-64-H-DLC-JTJ |
| Petitioner, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRAGE JUDGE |
| TOM GREEN, | |
| Respondent. | |

This case comes before the Court on Petitioner Wayne A. Hussar's application for writ of habeas corpus under 28 U.S.C. § 2254. Hussar is a state prisoner proceeding pro se.

Hussar's claims arise out of challenges to two separate state court matters in Montana's First Judicial District, Lewis and Clark County: (1) a sentence imposed following an August 8, 2017 revocation hearing, and (2) a January 2, 2018, conviction and sentence for Felony Assault on a Peace Officer and misdemeanor Partner Family Member Assault (PFMA).

Hussar also has filed a "Motion for Default Judgment" (Doc. 12) and "Motion for Mandatory Judgment." (Doc. 13.)

1

## I.    28 U.S.C. § 2254 Petition

For the reasons set forth below, Hussar's Petition should be denied.

### A. Procedural History/Background

According to Hussar, on April 3, 2017, a neighbor called law enforcement and lodged a complaint against him.  Lewis and Clark County Deputies began investigating potential Partner Family Member Assault (PFMA) and Assault with a Weapon charges.  See e.g., (Doc. 13-1 at 1-2.)  Hussar claims his wife, Sandra, repeatedly denied to Deputy Rieghard that any criminal conduct had occurred.  *Id*. at 2.  During this same incident, Hussar's probation and parole officer, Jaimee Salenko, authorized Deputy Schmidt to perform a search at Hussar's place of business which reportedly uncovered unauthorized items, including a gun.  As a result of this interaction, Hussar was charged with misdemeanor PFMA and felony Assault with a Weapon; a petition to revoke Hussar's probation was also filed.  *Id*. Following his arrest and transport to the detention center, an altercation occurred in the sally-port between Hussar and Rieghard.  Hussar was also charged with felony Assault on an Officer.

Following a hearing on August 8, 2017, Hussar's probation for a prior Tampering with/Fabricating Physical Evidence conviction was revoked.  Hussar received a 3-year commitment to the Montana Department of Corrections.  But Hussar contends this revocation was unlawful because it was based, at least in part,

upon the Assault with a Weapon charge which was ultimately dismissed.[1]  *Id.* at 3.

Hussar contends at a subsequent change of plea hearing, held on January 2, 2018,

he was essentially "entrapped" by his public defender, Nicole Klein, into entering a

guilty plea to felony Assault on a Police Officer, when he believed he would be

sentenced to misdemeanor assault.  *Id.*; see also, (Doc. 4 at 3.)  Hussar was

sentenced to 10-years at the Montana State Prison for the Assault on an Officer.[2]

Hussar did not file a direct appeal, but instead filed an application for review

of his sentence with the Montana Sentence Review Division (SRD).  In April of

2018, Hussar's sentence was affirmed.[3]  Hussar then filed a motion for an out-of-

time appeal with the Montana Supreme Court.  The Court denied Hussar's request

because he failed to demonstrate extraordinary circumstances to excuse the

untimely filing.  *State v. Hussar*, No. DA 18-0443, Or. (Mont. Aug. 7, 2018).

Undeterred, Hussar continued his attempts at seeking relief. The Montana

Supreme Court explained:

> [Hussar] has filed an appeal, purportedly from the order entered by
> the First Judicial District Court, Lewis and Clark County, on

---

[1] But it appears Hussar did eventually plead guilty to the misdemeanor PFMA, which resulted from the same events of April 3, 2017, during which Hussar was also charged with Assault with a Weapon.  See e.g., *State v. Hussar*, 2019 MT 224N, ¶ 4.

[2] Hussar's misdemeanor PFMA conviction was ordered to run concurrently to this felony sentence.

[3] See, SRD decisions: http://montanacourts.org/courts/supreme/boards/srd/mwp/ctl/Form/mid/28655#70333195-decisions---state-prison (accessed March 18, 2020).

> December 12, 2018, which addressed numerous pleadings filed by
> Hussar in five different causes before the court.  The content of
> Hussar's appellate arguments concern his convictions by guilty plea
> of felony assault on a peace officer or judicial officer, and of
> misdemeanor partner or family member assault in District Court
> Cause No. DDC-2017-167.  Our review is limited to this matter,
> wherein judgment was entered on January 29, 2018.  Several
> pleadings filed by Hussar in the District Court arguably addressed
> these convictions, including a motion to withdraw his plea denied by
> the court on October 19, 2018, and as described by the District Court,
> a "claimed petition for post-conviction relief" that the court
> summarily denied as failing to comply with statutory requirements
> governing such petitions, within its order of December 12, 2018.

*State v. Hussar*, 2019 MT 224N, ¶ 2 (Mont. Sept. 17, 2019).  The Court noted

Hussar appeared to be attempting to challenge his January 2018 judgment of

conviction under the guise of appealing the state district court's December 2018

order.  *Id.* at ¶ 3.  The Court determined that even if it were to construe Hussar's

pleading as timely, he failed to establish a basis for relief.  *Id.* at ¶ 4.  Specifically,

the Court explained:

> after entering a plea agreement but prior to the scheduled change of
> plea hearing in October 2017, Hussar wrote a personal letter to the
> presiding judge asking to "withdraw" his plea because he had been
> misinformed by his counsel about the terms of the agreement. The
> District Court granted additional time for Hussar to decide whether to
> enter a plea or proceed to trial, after which Hussar's counsel filed a
> second motion to vacate the trial and set another change of plea
> hearing. Hussar signed an acknowledge of waiver of rights and
> entered a guilty plea to the revised charges, one of which had been
> reduced to a misdemeanor, and Hussar was sentenced in January
> 2018.

4

*Id.*  Hussar failed to establish good cause for withdrawal of his pleas or demonstrate that the district court erred in dismissing his petition for postconviction relief for failing to satisfy the pleading requirements. *Id.*

Somewhat disingenuously, before this Court, Hussar contends that he never appealed the state district court's denial of his petition for postconviction relief, but instead "went straight to a petition for certiorari in Washington D.C. Supreme Court." See, (Doc. 4 at 5, ¶ 13(A)(v)).  A review of the United States Supreme Court docket reveals that Hussar filed his writ on June 25, 2019; it was denied on October 7, 2019.  See, *Hussar v. Reynolds*, 140 S. Ct. 210 (2019).

### B. Hussar's Claims

Although not clearly stated, Hussar seems to allege that his public defender, Nicole Klein, provided ineffective assistance.  First, Hussar asserts Klein "promised" him the PFMA charge would be dismissed.  (Doc. 4 at 4, ¶ 13(A)(1)). Additionally, Hussar claims Klein failed to investigate a statement, purportedly made by Lieutenant Looney to Hussar, that after viewing the sally-port video, he did not agree with the felony Assault on an Officer charge.  Instead, Looney felt a "simple misdemeanor assault" charge was more appropriate.  *Id.*

Hussar next claims that his felony Assault on an officer conviction is "false," presumably because there is inadequate factual support.  Hussar claims that when Deputy Rieghard grabbed his shoulders and pulled him backwards, slamming him

into the wall of the sally-port, he lost his balance.  (Doc. 4 at 5, ¶ 13(B)(1)).

Hussar explains he picked up his left foot to catch his balance, and in response

Rieghard yelled, "that's assault on an officer!"  *Id*.  Hussar claims his foot simply

went between Rieghard's legs, but that it never contacted Rieghard's groin or legs.

*Id*.; see also, (Doc. 11 at 2.)

### C. Analysis

To be eligible for federal habeas corpus relief, a state prisoner must establish

that he is "in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. §2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).

A state prisoner "whose claim was adjudicated on the merits in state court is not

entitled to relief in the federal court unless he meets the requirements of 28 U.S.C.

§2254(d)."  *Price v. Vincent*, 538 U.S. 634, 638 (2003).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

applies to Hussar's petition because it was filed after 1996.  AEDPA substantially

limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v.*

*Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions

be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

(per curiam).  Thus, if a petitioner's claim has been "adjudicated on the merits" in

state court, "AEDPA's highly deferential standards kick in."  *Davis v Ayala*, __

U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citations omitted).

Under the deferential standard of AEDPA, a federal court may not grant a prisoner's petition on a claim that was decided on the merits in state court, unless the state court's decision: (1) "was contrary to federal law then clearly established in the holdings of [the United States Supreme Court]"; (2) "involved an unreasonable application of such law"; or (3) "was based on an unreasonable determination of the facts in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (internal quotation marks omitted); see also, 28 U.S.C. §2254(d), *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).

While Hussar has attempted to argue to this Court that he did not appeal the state district court's denial of his postconviction petition and, instead, filed a petition for certiorari with the United States Supreme Court, the decision of the Montana Supreme Court, discussed above, belies his assertion. The Montana Supreme Court affirmed the denial of Hussar's postconviction petition, finding that the state district court did not err in determining Hussar failed to meet the requisite pleading requirements.

The Court noted after Hussar advised the district court, in October of 2017, he had been "misinformed" about the nature of his plea agreement, Hussar was provided more time in which to decide whether to enter a plea or proceed to trial. Hussar's counsel then filed a second motion to vacate the trial and set the matter for a change of plea. Prior to the January 2018 sentencing, Hussar signed and filed

an acknowledgement of rights and ultimately pled guilty to revised charges of PFMA and Assault on a Peace Officer.

Hussar's claim before this Court that public defender Klein "promised" him the PFMA charge would be dropped, based upon nothing more than his own conclusory statement, is not persuasive.  Particularly because Hussar voluntarily entered into a plea agreement and signed an acknowledgment of rights form regarding the charges to which he pled guilty.  Likewise, Hussar's claim that Klein failed to adequately investigate Lieutenant Looney's statement in which Looney purportedly opined to Hussar that a simple misdemeanor assault charge would be more appropriate, given the exchange that occurred between Hussar and Rieghard in the sally-port, is similarly unavailing.  Hussar acknowledged the charge and entered his plea.  Moreover, there is no such thing as misdemeanor Assault on an Officer.  Under Montana statute, the charge by nature is a felony.  See, Mont. Code Ann. § 45-5-210(2)(a).

Similarly, Hussar's allegation that what occurred between him and Deputy Rieghard in the sally-port did not amount to assault is similarly defeated by his guilty plea.  Once Hussar expressed reservation about entering a plea, the district court provided Hussar additional time to make a decision.  Nonetheless, Hussar elected to proceed with a change of plea and sentencing.  Apparently, in exchange for his guilty plea to the two charges, the charge of Assault with a Weapon was

8

dismissed.  Further, Hussar does not allege that there were any irregularities in the state court proceedings or that his plea was not voluntary.  Thus, by entry of his written acknowledgment, Hussar indicated that he had reviewed the plea agreement with counsel and understood the contents of the document.  Hussar also acknowledged that he understood the rights he was giving up by pleading guilty. Finally, he affirmed that there was a factual basis, not only for the PFMA, but also for the Assault on an Officer.  These acknowledgements, made in open court, carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Hussar's claim before this Court, that there was no factual basis for his guilty plea and that he was somehow mislead into entering the pleas, fails in the face of his own acknowledgment and entry of plea. Hussar's dissatisfaction with outcome of his case/and or the sentence imposed, does not render his pleas baseless or his counsel's assistance deficient

In short, Hussar has failed to demonstrate that the state courts' decisions rejecting his challenges to his guilty pleas and the effectiveness of his counsel were contrary to, or constituted an unreasonable application of, clearly established federal law. Accordingly, Hussar's petition should be denied.

### D. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules governing § 2254

Proceedings.  A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Hussar's claims do not survive deferential review under AEDPA.  There are no close questions and there is no basis to encourage further proceedings at this time.

## II.    Hussar's Outstanding Motions

In his Motion for Default Judgment, due to the various violations alleged to have occurred in his state court proceedings, Hussar seeks: one million dollars in damages from the two deputies involved in his initial arrest in April of 2017, Rieghard and Schmidt; and a million dollars from his state public defender, Klein. (Doc. 12 at 3.)  Hussar also requests this Court order the deputies be suspended from their jobs for six months and that his public defender be "punished" in a prison facility.  *Id.*

In his Motion for Mandatory Judgment, Hussar asks the Court to impose monetary sanctions of $2,500/day for the time he has spent incarcerated since April

3, 2017.  He asks the sanctions be made against: District Court Judge Reynolds, Schmidt, Rieghard, Klein, Probation/Parole Officer Salenko, the State of Montana, and the Montana Department of Justice.  (Doc. 13 at 5.)

As Hussar has previously been advised, prisoners cannot obtain monetary damages in federal habeas.[4] "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez,* 411 U.S. 475, 493, (1973). "The power of a federal habeas court 'lies to enforce the right of personal liberty' [and] ... [a]s such, a habeas court 'has the power to release' a prisoner, but 'has no other power.' " *Douglas v. Jacquez,* 626 F.3d 501, 504 (9th Cir.2010) (citation omitted). As the Supreme Court has explained,

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy.

*Preiser,* 411 U.S. at 493; *see also Nelson v. Campbell,* 541 U.S. 637, 646 (2004) ("[D]amages are not an available habeas remedy...."); *Muhammad v. Close,* 540 U.S. 749, 751 (2004) (referring to "relief unavailable in habeas, notably

---

[4] See *Hussar v. Salmonsen*, Cause No. CV-18-49-H-DLC-JTJ, Or. (Doc. 13 at 2-3)(citing *Hussar v. Mahoney*, Cause No. CV-11-7-H-DWM-RKS, Or. (Doc. 3 at 1); and, *Hussar v. Rieghard, et al*, Cause No. CV-17-77-H-DLC-JTJ, Or. (Doc. 3 at 3-4)).

damages"). Because the aim of both of Hussar's pending motions is primarily to seek monetary damages, such a request cannot be considered in federal habeas. Likewise, this court cannot impose punishment, in the form of job suspension or imprisonment, upon any of the individuals named by Hussar. Hussar's motions will be dismissed for lack of jurisdiction.

Based on the foregoing, the Court enters the following:

## ORDER

Hussar's Motion for Default Judgment (Doc. 12) and Motion for Mandatory Judgment (Doc. 13) are DISMISSED.

## RECOMMENDATION

1. Hussar's Amended Petition (Doc. 4) should be DENIED.

2. The Clerk of Court should be directed to enter a judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Hussar may object to this Findings and Recommendation within 14 days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

---

[5] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise

novo determination by the district judge and/or waive the right to appeal.

Mr. Hussar must immediately notify the Court of any change in his mailing

address.  Failure to do so may result in dismissal of his case without notice to him.

DATED this 19th day of March, 2020.


/s/ John Johnston
John Johnston
United States Magistrate Judge

---

expire under Rule 6(a)."  Therefore, since Hussar is being served by mail, he is
entitled an additional three (3) days after the period would otherwise expire.